## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KELA SMALL**, individually, and on behalf of others similarly situated, | : <br> : <br> : Case No: <br> : |
| Plaintiff, | : Hon. <br> : |
| v. | : Mag. <br> : |
| **HF MANAGEMENT SERVICES, LLC d/b/a HEALTHFIRST**, a limited liability company, | : <br> : <br> : <br> : |
| Defendant. | : <br> : |

## <u>COLLECTIVE/CLASS ACTION COMPLAINT</u>

Plaintiff, Kela Small ("Plaintiff"), hereby brings this Collective/Class Action Complaint against Defendant, HF Management Services, LLC d/b/a Healthfirst ("Defendant"), and states as follows:

### <u>INTRODUCTION</u>

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the New York Minimum Wage Act ("NYMWA"), §§ 650, *et seq.*, the New York Payment of Wages Act ("NYPOW"), §§ 190, *et seq.*, and 12 N.Y.C.R.R. §§ 142, *et seq.* ("NYCRR"), The South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10, *et seq.* ("South Carolina Wage Act"), and for breach of contract and unjust enrichment.

2.     According to Defendant's website, Defendant employs 5,000+ employees and has "grown into New York's largest not-for-profit health insurer, offering high-quality, affordable

plans to fit every life stage, including Medicaid plans, Medicare Advantage plans, long-term care plans, qualified health plans, and individual and small group plans."[1]

3.      In providing the aforementioned services, Defendant employed customer service representatives in its brick-and-mortar contact centers and in remote call center settings across the United States. Defendant used a number of titles, including, but not limited to, Service Agent and Customer Service Representative, to refer to its customer service representatives (collectively referred to herein as "CSRs"). Defendant heavily relied on CSRs to, among other things, receive and address inquiries from new and established Medicaid and Medicare participants, de-escalate and resolve complaints, and engage in member retention activities.

4.       Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

5.       Defendant employed Plaintiff as hourly call center employees with the job title of CSR.

6.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's hourly call center employees, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

7.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

8.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of

---

[1] *See* https://healthfirst.org/about-us (last visited Mar. 22, 2024).
[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited Mar. 22, 2024).

an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

9. Defendant violated the FLSA, state wage and hour law, and common law by systematically failing to compensate its CSRs for compensable work tasks completed before and after their scheduled shifts and during their unpaid meal periods, when they were not logged into Defendant's timekeeping system. The aforementioned policy and procedure resulted in these employees not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for straight-time worked.

10. More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems, completing e-learnings, and reviewing company policy changes prior to clocking into Defendant's timekeeping system and when returning from their meal periods; and reviewing notes, talking points, job aides; closing all work applications and systems they used during their shift; disconnecting from Defendant's server; and shutting down their computer after their last fielded call for the shift concluded and after clocking out of Defendant's timekeeping system.

11. Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her unpaid back wages, liquidated damages, attorneys' fees and costs to make her and the putative Collective and Class whole for damages they suffered, and any other remedies to which she may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

12.     At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employee who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claims, pursuant to 28 U.S.C. § 1331, because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

14.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

15.     Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

17.     This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of New York, is registered with the New York Department of State, and maintains its principal place of business in the state of New York.

18.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this District.

## PARTIES

19.      Plaintiff Kela Small is a resident of Brooklyn, New York. She worked remotely

for Defendant as a non-exempt CSR, with the specific job title of Service Agent, in New York from approximately September 6, 2022 to February 9, 2023 and end of March 2023 to present, and South Carolina from approximately February 10, 2023 to end of March 2023. Defendant has compensated Plaintiff through the payment of an hourly rate, most recently $21.75 per hour. Plaintiff signed a consent to join this collective action, which is attached as **Exhibit A**.

20.     Additional Opt-In Plaintiff were or are employed by Defendant as CSRs during the past three years and their consent forms will also be filed in this case.

21.     Defendant HF Management Services, LLC is a New York limited liability company (DOS ID: 2368432) with its principal place of business located in New York, NY and a registered agent for service of process on the Secretary of State as Agent listed as Nahum Kianovsky, VP, Deputy General Counsel, 100 Church Street, New York, NY 10007.

## GENERAL ALLEGATIONS

22.      Prior to hiring prospective CSRs, Defendant's Talent Acquisition – Human Resources department provided them with a written offer setting forth the job requirements and hourly rate of pay.

23.      Defendant maintained documentation of the promised hourly wage for each CSR including, but not limited to: offer letters, paystubs, and/or other payroll records.

24.     Plaintiff received an offer from Defendant to work as CSRs, and she accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

25.     Plaintiff performed under her agreement with Defendant by carrying out her job duties and responsibilities. More specifically, Plaintiff took inbound calls from new and existing Medicare and Medicaid patients, made periodic outbound calls to patients, and provided high-

quality customer service to providers and members across all Lines of Business ("LOBs") with a variety of questions and issues on topics such as eligibility, benefits, claims process, and escalations. To provide the aforementioned customer service, Plaintiff utilized Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

26.     Defendant paid its CSRs at varying hourly rates.

27.     Defendant's CSRs typically worked four (4) to five (5) days each week and up to, and on occasion more than, forty (40) hours per week.

28.     While Defendant has access to all of the payroll records, Plaintiff does not, and there were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek, and less than forty (40) hours in a workweek.

29.     Defendant provided training to CSRs, including Plaintiff, on, *inter alia*, how to carry out their day-to-day job duties; how to track their time; how to load and log into their computer programs at the beginning of the shift and how to log out at the end of the shift; attendance, schedule, and call quality expectations; and Defendant's policies. The training that Defendant provided to all of its CSR was substantially, if not entirely, the same.

30.     At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

31.     Defendant required Plaintiff and all other CSRs to use a computer and a variety of essential and indispensable computer programs, applications, and servers in order to perform their job duties.

32.     Defendant instructed Plaintiff and other similarly situated CSRs to be "call ready" the moment their scheduled shift started. This required Defendant's CSRs to load and log into all

6

of their essential work-related computer programs and applications *before* the start of their shifts and *before* clocking into Defendant's timekeeping system so they could be prepared to take calls the moment their shifts began. During the boot-up and login process, Defendant's CSRs often experienced technical difficulties and/or had to wait for their computer to perform updates, increasing the amount of off-the-clock work they performed that shift.

33.    Defendant's CSRs necessarily had to perform off-the-clock work every shift because Defendant relied exclusively on a web-based timekeeping system to track its CSRs' hours, including Plaintiff's hours, worked. Therefore, Defendant's CSRs were unable to clock in unless and until they performed off-the-clock work before the start of their scheduled shifts and before they could access and log into (and therefore clock into) the program.

34.    Defendant enforced its "call ready" policy and required its CSRs perform off-the-clock through its Attendance Policy for Contact Center Operations Employees ("Attendance Policy") and uniform compensation, timekeeping, schedule adherence, and overtime procedures; the call quality assurance system it used to monitor and grade CSRs' calls; and its "departmental incentive" program.

35.    More specifically, Defendant's Attendance Policy stressed that "[c]onsistent, on time attendance [wa]s expected from all Healthfirst employees" and that "employees [we]re expected to adhere to their workplace schedules" "[t]o ensure adequate staffing, positive team morale, and to meet expected productivity standards[.]" The Attendance Policy was "intended to encourage good attendance and provide leadership with standards for handling attendance-related issues." Deviations from Defendant's Attendance Policy were "reviewed with the employee[s] and reported on the employee[s'] attendance record." For example, Plaintiff's supervisor, Deb Wise, placed Plaintiff on probation on at least one occasion for being late to her shift and not being phone

ready the moment her scheduled shift started.

36.    Defendant also maintained metrics pursuant to which it monitored the CSRs' clock in times in relation to their start-of-shift time, as well as the time the CSRs went into a "ready" status. For instance, and according to Defendant's policies and procedures, "[a]ny employee that [wa]s not logged in an 'Available' status at their designated start time [wa]s considered late" and "[e]mployees who arrive[d] late [we]re not permitted to work later than scheduled to make up time." Additionally, Defendant considered its employees to be "misrepresent[ing]" "time worked" if he or she clocked in but did not immediately "begin work in the assigned work area as scheduled."

37.    Along similar lines, Defendant routinely evaluated CSRs and enforced its Attendance and Timekeeping Policy that required overtime to "be approved by the Workforce Enablement team in advance." The aforementioned policy provided that "[v]iolation[s] of [it]…w[ould] be considered in accordance with [Defendant's] Disciplinary Action policy."

38.    Defendant also utilized quality assurance guidelines to perform call assessments and required CSRs to meet various metrics and criteria worth pre-determined point values and totaling 100 points. For example, Defendant's CSRs were required to recite specific "HIPPA verbiage" to callers and a failure to do so resulted in CSRs being deducted up to four (4) points. Defendant's guidelines and quality assurance standards required CSRs to be logged into all computer programs, applications, and systems the moment their scheduled shift started. Defendant also maintained a "departmental incentive" program through which it provided CSRs points or "kudos" for meeting Defendant's metrics. On at least one occasion, Plaintiff recalls her supervisor, Ms. Wise, placing her on probation for call quality concerns.

39.    Defendant's CSRs used the same or similar computer networks, software

programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an important part of the CSRs' work and CSRs could not perform their jobs without them.

40.     Defendant's CSRs also performed off-the-clock work when they returned from their 30 minute lunches and prepared themselves to be call ready the moment their meal periods concluded.

41.     Similarly, Defendant's CSRs, including Plaintiff, performed work off-the-clock at the end of their scheduled shift when they reviewed notes, talking points, and job aides, completed e-learnings, and logged out of the programs and applications that they utilized during their shifts and shutdown their computer. For example, Plaintiff's supervisors, for example Claudia Quintanilla, explicitly instructed Plaintiff to complete her e-learnings in Plaintiff's "downtime" (i.e. off-the-clock).

42.     The pre-, mid-, and post-shift off-the-clock time Plaintiff and Defendant's CSRs spent on Defendant's e-learnings, reviewing company policies and procedures, and booting-up/logging into and shutting down their computers, applications and programs directly benefitted Defendant and was integral and indispensable to the CSRs' job responsibilities.

43.     As a result of the pre-, mid-, and post-shift off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately 47 to 93 minutes of compensation every shift.

44.     At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre-, mid-, and post-shift activities; however, Defendant failed to do so and failed to compensate them for the off-the-clock work they performed, thus breaching its agreements with Plaintiff and its CSRs.

45.     Further, Defendant was aware that by relying exclusively on a web-based timekeeping system, some off-the-clock work was bound to occur every shift.

46.      Indeed, in light of the explicit and long-standing DOL guidance cited above, and previously filed lawsuits against Defendant alleging the same and/or substantially similar FLSA violations as those alleged herein[3], there is no conceivable way for Defendant to establish that it acted in good faith.

47.     Despite knowing Plaintiff and all other CSRs performed this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

48.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and similarly situated CSRs booted-up and logged into their computers each shift, along with their clock in and out times in the timekeeping system.

49.     Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and other CSRs experienced technical issues.

50.     Because Defendant required its CSRs, including Plaintiff, to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they actually worked.

---

[3] *See Collins v. HF Management Services, LLC*, Case No. 24-cv-00465-MKV, *Foust v. HF Management Services, LLC*, Case No. 23-cv-07314-KPF, *Butt v. HF Management Services, LLC., and HealthFirst PHSP, Inc.*, Case No. 18-cv-07017-AMB-LB.

A. **Pre-Shift Off-the-Clock Work**

51.     The off-the-clock pre-shift process took substantial time, approximately thirty (30) minutes per shift. Specifically, before each shift CSRs had to undertake numerous essential work tasks such as, turning on their computer; logging into Microsoft Windows using a password and/or username; securing access to Defendant's server (the Virtual Private Network or "VPN") using Cisco AnyConnect (Defendant's CSRs had to enter their username and password, click "OK", then use a dual authentication process (Microsoft Authenticator) through which they entered into their computer a Microsoft verification code they received on their cell phone); opening and logging into various essential programs and websites they used in connection with their job duties (these programs included, but were not limited to, Google Chrome, Workday, Salesforce, and job aids that assisted CSRs with fielding calls); completing e-learnings and reviewing company policy changes; and placing themselves in a "ready" status at the start of the scheduled shift.

52.     Defendant's employees had to complete some, if not all of, this process before the start of their scheduled shifts and before fielding calls. Consequently, the CSRs had to begin working at least thirty (30) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

53.     Defendant's CSRs were not compensated for all or some of this time because Defendant not only required CSRs to be "call ready" by the start of their scheduled shifts, but also relied exclusively on a web-based timekeeping system that Defendant's CSRs could not access unless and until they performed work off-the-clock.

54.     Thus, in workweeks where Defendant's CSRs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing

to: (1) pay them the federally mandated overtime compensation for all work performed; and (2) record all of the time that its CSRs, including Plaintiff, worked for Defendant's benefit.

55.    The pre-shift off-the-clock work CSRs performed directly benefitted Defendant, and was integral and indispensable to their job duties and responsibilities.

**B.  Meal Period Off-the-Clock Work**

56.    Defendant promised its CSRs one 30-to-45-minute unpaid meal period each shift.

57.    Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *<u>completely relieved</u>* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

58.    On days when Defendant's CSRs were given a 30-minute meal period, Defendant did not provide CSRs with a bona fide meal break because it required its CSRs to return to their computer stations prior to the end of their unpaid meal break to log back into their computer, access various passwords through Cyber Arc[4] to log back into various programs that timed out while they were away, and place themselves in a "ready" state so they could resume taking calls promptly at the end of their scheduled meal periods.

---

[4] To access the passwords maintained in Cyber Arc, Plaintiff had to either sign into the program using her credentials or scan a QR code on her phone. Plaintiff had to scan separate QR codes with her phone for the Microsoft Edge and Chrome programs she used in the course of her job duties and that timed out while she was away from her desk.

59. The login process during meal periods was somewhat truncated because some of the programs remained opened; however, CSRs spent approximately two (2) to three (3) minutes performing this work during their unpaid meal periods. Thus, Defendant maintained a common policy and plan pursuant to which it failed to pay CSRs for no less than two (2) minutes of work performed during their meal periods.

60. The off-the-clock work Plaintiff and other CSRs performed during their meal periods was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the CSRs' job duties and responsibilities.

61. In workweeks where Defendant's CSRs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; and (2) record all of the time that its CSRs, including Plaintiff, worked for Defendant's benefit.

62. Defendant's management knew or should have known that Plaintiff and other CSRs performed this off-the-clock work, but permitted and even rewarded it through Defendant's metrics, compensation and timekeeping policies, and schedule adherence requirements.

**C. Post-Shift Off-the Clock Work**

63. Pursuant to Defendant's policies, training and direction, Plaintiff and similarly situated CSRs were required to clock out the moment they were done fielding their last call for the shift and *before* reviewing notes, talking points, job aides, and performing additional e-learnings; closing all work applications and systems they used during their shift; disconnecting from Defendant's server; and shutting down their computer. Defendant's CSRs were required to shut

down their computer every shift to ensure their computers performed the necessary software updates.

64.     Plaintiff and other CSRs were not allowed to begin their post-shift off-the-clock work and the shutdown and logout process until they completed their last fielded call.

65.     This resulted in Plaintiff and other CSRs performing anywhere from fifteen (15) minutes to an hour or more of off-the-clock work every shift.

66.     Thus, in workweeks where Defendant's CSRs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; and (2) record all of the time that its CSRs, including Plaintiff, worked for Defendant's benefit.

67.     The post-shift off-the-clock work Plaintiff and other CSRs performed was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities.

### D.   The Off-the-Clock Work Results in Viable "Gap Time" Claims

68.     Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc*., 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

69.     Plaintiff and all similarly situated CSRs regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

70.    During the weeks that CSRs did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's agreements with them, and in violation of state wage-and-hour laws.

**E.  Plaintiff's Exemplary Workweek**

71.    The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one pay period where Defendant failed to pay Plaintiff regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff provides the following pay statements:

**November 26 – December 9, 2023 Pay Statement**

- Plaintiff worked less than 40 hours in each workweek within the pay period at a rate of $21.75 per hour and upon information and belief was paid $21.75 for each regular hour worked.

- With pre-, mid-, and post-shift off-the-clock work, and for each workweek within the pay period, Plaintiff should have been paid an additional 47 to 93 minutes or more at her regular rate of $21.75 for each regular hour.

**Exhibit B**, Small 11/26/23 – 12/09/23 Exemplary Pay Statement.

**December 10 – 23, 2023 Pay Statement**

- Plaintiff worked more than 40 hours in at least one workweek at a rate of $32.825 per hour and upon information and belief was paid $32.825 per hour in overtime.

- With pre-, mid-, and post-shift off-the-clock work, Plaintiff should have been paid an additional 47 to 93 minutes or more at her overtime rate of $32.825 for each hour worked in excess of 40 in the overtime workweek(s).

**Exhibit C**, Small 12/10/23 – 12/23/23 Exemplary Pay Statement.

**COLLECTIVE ACTION ALLEGATIONS**

72.    Plaintiff bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of

herself and on behalf of:

>*All current and former hourly CSRs who worked for Defendant at any time during the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

73.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

74.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

75.     Consistent with Defendant's policies and practices, Plaintiff and the proposed FLSA Collective were not paid for all regular and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

76.     All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

77.     Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

78.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

b.  Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

79.    Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

80.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

81.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are (1) required to work without compensation due to uncompensated boot up and log out time; and (2) entitled to overtime for hours worked over forty (40) in a week.

82.    Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

83.    The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## RULE 23 NEW YORK CLASS ACTION ALLEGATIONS

84.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly CSRs who worked for Defendant in New York during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 New York Class"). Plaintiff reserves the right to amend this definition if necessary.

85.    The members of the Rule 23 New York Class are so numerous that joinder of all Rule 23 New York Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 New York Class members. Rule 23 New York Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

86.    There is a well-defined community of interests among Rule 23 New York Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 New York Class. These common legal and factual questions, include, but are not limited to, the following:

    a.    Whether Defendant failed to keep accurate time and payroll records for Plaintiff and the Rule 23 New York Class;

    b.    Whether the pre-shift time Rule 23 New York Class members spent on startup and login activities before "clocking in" for each shift is compensable;

    c.    Whether the post-shift time Rule 23 New York Class members spent reviewing notes, talking points, and job aides, and closing all programs, applications and networks after "clocking out" is compensable;

    d.    Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 New York Class member regular wages or minimum wage for each non-overtime hour worked;

    e.    Whether Defendant engaged in a policy or practice of failing to pay each Rule

23 New York Class member overtime gap time when associated with unpaid overtime; and

f.  Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws and wage acts applicable to the members of the Rule 23 New York Class.

87.  Plaintiff's claims are typical of those of the Rule 23 New York Class in that she and all other Rule 23 New York Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 New York Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 New York Class members.

88.  Plaintiff will fully and adequately protect the interests of the Rule 23 New York Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 New York Class.

89.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 New York Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

90.  This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

91.  Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct.

1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a Plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

92.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 New York Class and declaratory relief is appropriate in this case with respect to the Rule 23 New York Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 SOUTH CAROLINA STATE LAW CLASS ACTION ALLEGATIONS

93.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly CSRs who worked for Defendant in South Carolina during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 South Carolina Class"). Plaintiff reserves the right to amend this definition if necessary.

94.     The members of the Rule 23 South Carolina Class are so numerous that joinder of all Rule 23 South Carolina Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 South Carolina Class members. Rule 23 South Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

95.     There is a well-defined community of interests among Rule 23 South Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 South Carolina Class. These common legal and factual questions, include, but are not limited to, the following:

> a.   Whether Defendant failed to keep accurate time and payroll records for Plaintiff and the Rule 23 South Carolina Class;
>
> b.   Whether the pre-shift time Rule 23 South Carolina Class members spent on startup and login activities before "clocking in" for each shift is compensable;

    c.   Whether the post-shift time Rule 23 South Carolina Class members spent reviewing notes, talking points, and job aides, and closing all programs, applications and networks after "clocking out" is compensable;

    d.   Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 South Carolina Class member regular wages or minimum wage for each non-overtime hour worked;

    e.   Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 South Carolina Class member overtime gap time when associated with unpaid overtime; and

    f.   Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws and wage acts applicable to the members of the Rule 23 South Carolina Class.

96.    Plaintiff's claims are typical of those of the Rule 23 South Carolina Class in that she and all other Rule 23 South Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 South Carolina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 South Carolina Class members.

97.    Plaintiff will fully and adequately protect the interests of the Rule 23 South Carolina Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 South Carolina Class.

98.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 South Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

99.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel

know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

100.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a Plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

101.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 South Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 South Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

102.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly CSRs who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

103.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

104.    There is a well-defined community of interests among Rule 23 Nationwide Class

members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

    a.  Whether Defendant failed to keep accurate time and payroll records for Plaintiff and the Rule 23 Nationwide Class;

    b.  Whether the pre-shift time Rule 23 South Carolina Class members spent on startup and login activities before "clocking in" for each shift is compensable time under applicable law;

    c.  Whether the post-shift time Rule 23 South Carolina Class members spent reviewing notes, talking points, and job aides, and closing all programs, applications and networks after "clocking out" is compensable time under applicable law;

    d.  Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

    e.  Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

105.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

106.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

107.    A class action is superior to other available methods for the fair and efficient

adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

108.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

109.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a Plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

110.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

111.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

112.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

113.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

114.    At all times relevant to this action, Plaintiff and the FLSA Collective were

"employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

115.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

116.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

117.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

118.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

119.    The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

120.    At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform pre-, mid-, and post-shift work off the clock, every shift, and failed to pay these employees overtime compensation for all work performed over forty (40) hours per week.

121.    The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities and the time associated with these activities was significant.

122.    In workweeks where Plaintiff and other FLSA Collective members worked forty

(40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207.

123.    As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

124.    Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

125.    As a result of the foregoing, Plaintiff was injured and seek appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 NEW YORK CLASS ACTION**
**VIOLATIONS OF THE NEW YORK MINIMUM WAGE ACT ("NWMWA") §§ 650, *et seq*., the NEW YORK PAYMENT OF WAGES ACT ("NYPOW") §§ 190, *et seq*., and 12 N.Y.C.R.R. §§ 142, *et seq.* – ("NEW YORK LABOR LAWS") – FAILURE TO PAY MINIMUM AND OVERTIME WAGES AND FAILURE TO MAINTAIN AND PRESERVE WAGE RECORDS**

126.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

127.    At all times relevant to the action, Defendant was an employer covered by the overtime mandates of the NYMWA and the NYPOW, and Plaintiff and the Rule 23 New York Class were employees entitled to the NYMWA and the NYPOW's protections.

128.    The NYMWA requires employers to pay their employees minimum wages "for each hour worked…" *See* N.Y. Labor Law §§ 190 *et seq*., N.Y. Labor Law § 652, and the Wage Orders issued under 12 N.Y.C.R.R. § 142.

129.    The NYMWA entitles employees to compensation for every hour worked in a workweek. 12 NYCRR § 142-2.1.

130.    Defendant violated the NYMWA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 New York Class at a rate that was at least equal to the applicable New York State minimum wage for all regular hours they worked off-the-clock in non-overtime workweeks and for all overtime gap time.

131.    Defendant also violated the NYWA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 New York Class their overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. N.Y. Lab. Law §§ 650 *et seq*.; 12 NYCRR § 142-2.2.

132.    The NYPOW and 12 N.Y.C.R.R. § 142-2.6 require employers to establish, maintain and preserve true and accurate records of all hours worked.

133.    Defendant violated the NYPOW and 12 N.Y.C.R.R. § 142-2.6 by failing to establish, maintain, and preserve true and accurate records of all hours Plaintiff and the Rule 23 New York Class worked for the benefit of Defendant, as discussed herein.

134.    The NYMWA entitles employees who have not been paid in accordance with the NYMWA to bring a civil action to recover all unpaid amounts, liquidated damages, interest, costs, and reasonable attorneys' fees. N.Y. Labor Law § 663(1).

135.    The NYPOW entitles employees to bring a private action against an employer "to recover full wages, benefits and wage supplements and liquidated damages accrued during the six

years previous to the commencing of such action." N.Y. Labor Law § 198(3) ("Investigation by the commissioner shall not be a prerequisite to nor a bar against a person bringing a civil action under this section.")

136.    New York's Wage Theft Prevention Act (and previously the Unpaid Wages Prohibition Act), NY CLS Labor §§ 191, *et seq.* ("New York Labor Law") provides that employees "shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." N.Y. Labor Law § 191(d).

137.    N.Y. Labor Law § 198 allows an employee who has not been paid in accordance with New York's Wage Theft Prevention Act to bring a civil action to recover all unpaid amounts, liquidated damages, interest, costs, and reasonable attorneys' fees.

138.    Defendant's uniform policies and practices, as described above, were (and are) willful, intentional, unreasonable, arbitrary, and in bad faith.

139.    As a result, the Rule 23 New York Class have and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 New York Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the NYMWA and NWPOW at an amount to be proven at trial.

**COUNT III**
**RULE 23 SOUTH CAROLINA CLASS ACTION**
**VIOLATIONS OF THE SOUTH CAROLINA PAYMENT OF WAGES ACT, S.C. CODE ANN. §§ 41-10-10, *et seq.* ("SOUTH CAROLINA WAGE ACT")**

140.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

141.    The South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10, *et seq.*; provides that "[e]very employer in the State shall pay all wages due in lawful United States money

or by negotiable warrant or check bearing even date with the payday." S.C. Code Ann. § 41-10-40(A).

142.   Pursuant to S.C. Code Ann. § 41-10-80(C), an employee who has not been paid in accordance with the South Carolina Payment of Wages Act "may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow."

143.   At all times relevant to the action, Defendant was an employer covered by the overtime and wage mandates of the South Carolina Wage Act, and the Rule 23 South Carolina Class are employees entitled to the South Carolina Wage Act's protections.

144.   The South Carolina Wage Act entitles employees to compensation for every hour worked in a workweek.

145.   The South Carolina Wage Act entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week.

146.   Defendant violated the South Carolina Wage Act by regularly and repeatedly failing to compensate the Rule 23 South Carolina Class for the time spent on the work activities described in this Complaint.

147.   Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

148.   As a result, the Rule 23 South Carolina Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Couth Carolina Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the South Carolina Wage Act at an amount to be proven at trial.

<u>**COUNT IV**</u>
<u>**RULE 23 NATIONWIDE CLASS ACTION**</u>
<u>**BREACH OF CONTRACT**</u>

149.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

150.     At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on Defendant's behalf.

151.     Evidence of these contracts include Defendant's offer letters, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for hourly employee work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

152.     For example, Defendant offered to compensate Plaintiff at a minimum of $21.75 per hour if she agreed to perform services for Defendant as a CSR.

153.     Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for *all* of the hours worked.

154.     Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $21.75 per hour within the applicable period.

155.     Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid-, and post-

shift work described herein.

156.    By not paying Plaintiff and every other Rule 23 Nationwide Class member their fixed, pre-agreed upon hourly rate for *all* of the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

157.    Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

158.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

159.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

160.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

<u>**COUNT V**</u>
<u>**RULE 23 NATIONWIDE CLASS ACTION**</u>
<u>**UNJUST ENRICHMENT**</u>

161.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

162.    This Count is pled in the alternative to Count IV, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

163.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's benefit.

164.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

165.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

166.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

167.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

168.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

169.    Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

170.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the

Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

171.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a.    An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this action as a class action (for the Rule 23 South Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's South Carolina state law claims (Count II);

c.    An Order certifying this action as a class action (for the Rule 23 New York Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's New York state law claims (Count III);

d.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count IV);

e.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's unjust enrichment claim (Count V);

f.    An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, Rule 23 South Carolina Class members, Rule 23 New York Class members, and Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

g.    An Order designating the Plaintiff as representatives of the FLSA Collective, the Rule 23 South Carolina Class, the Rule 23 New York Class, and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

h.    An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

i.      An Order declaring Defendant's violations of the FLSA were willful;

j.      An Order declaring Defendant violated South Carolina state law for failing to pay Plaintiff and the Rule 23 South Carolina Class the minimum wage and overtime compensation to which they were entitled;

k.      An Order declaring Defendant violated New York state law for failing to pay Plaintiff and the Rule 23 New York Class the minimum wage and overtime compensation to which they were entitled;

l.      An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

m.      An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Rule 23 Nationwide Class to perform;

n.      An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, the Rule 23 South Carolina Class, the Rule 23 New York Class, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

o.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as provided by statute;

p.      An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

q.      An Order awarding such other and further relief as this Court deems appropriate.

Dated: ******                          Respectfully Submitted,

                                       */s/* Jason T. Brown
                                       Jason T. Brown
                                       BROWN, LLC
                                       111 Town Square Place, Suite 400
                                       Jersey City, NJ 07310
                                       T: (877) 561-0000
                                       F: (855) 582-5297
                                       jtb@jtblawgroup.com

                                       Kevin J. Stoops (*pro hac vice* forthcoming)
                                       Alana Karbal (*pro hac vice* forthcoming)
                                       SOMMERS SCHWARTZ, P.C.

One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
akarbal@sommerspc.com

*Attorneys for Plaintiff and the Putative*
*Class/Collective Action Members*

## JURY DEMAND

Plaintiff Kela Small, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: May 7, 2024                    Respectfully Submitted,

                                      */s/* Jason T. Brown
                                      Jason T. Brown
                                      BROWN, LLC
                                      111 Town Square Place, Suite 400
                                      Jersey City, NJ 07310
                                      T: (877) 561-0000
                                      F: (855) 582-5297
                                      jtb@jtblawgroup.com

                                      Kevin J. Stoops (*pro hac vice* forthcoming)
                                      Alana Karbal (*pro hac vice* forthcoming)
                                      SOMMERS SCHWARTZ, P.C.
                                      One Towne Square, 17th Floor
                                      Southfield, Michigan 48076
                                      Telephone: 248-355-0300
                                      kstoops@sommerspc.com
                                      akarbal@sommerspc.com

                                      *Attorneys for Plaintiff and the Putative*
                                      *Class/Collective Action Members*